1  T. THEODORE CRUZ (SBN 153488)
   Attorney At Law
2  2120 Railroad Avenue Ste. 103-245
   Pittsburg, CA 94565
3  Telephone: (925) 642-7198
   tcruzesq@gmail.com
4
   Attorney for Plaintiff
5  ROBIN PEARSON

6

7

8                    **UNITED STATES DISTRICT COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

10

11 | ROBIN PEARSON,                              | **Case No.  3:14-cv-04524-JSC**                    |
   |                                             |                                                     |
12 |              Plaintiff(s),                  | **PLAINTIFF ROBIN PEARSON'S NOTICE OF**            |
   |                                             | **MOTION AND MOTION FOR AWARD OF**                 |
13 |       v.                                    | **REASONABLE ATTORNEYS FEES AND**                  |
   |                                             | **COSTS**                                           |
14 | GREEN TREE SERVICING, LLC,                  |                                                     |
   | NORTHWEST TRUSTEE SERVICES,                 |                                                     |
15 | INC.; FEDERAL NATIONAL                      | Hearing Date:    February 5, 2015                   |
   | MORTGAGE ASSOCIATION; BANK OF               | Time:  9:00 a.m.                                    |
16 | AMERICA, N.A.; and DOES 3 through           | Courtroom:  F (15th Floor)                     |
   | 100, inclusive,                             |                                                     |
17 |                                             | Case removed from state court:  October 9, 2014    |
   |              Defendant(s).                  |                                                     |
18 |                                             | State court complaint filed: August 21, 2013       |

- 0 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

**TO DEFENDANT GREEN TREE SERVICING LLC AND/OR ITS COUNSEL OF RECORD, AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that on February 5, 2015 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom F of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, plaintiff Robin Pearson will, and hereby does, move this Court for an order awarding plaintiff's reasonable attorney's fees and costs.

This motion is based on this notice, the attached Memorandum of Points and Authorities, the declaration of Virginia M. George, the declaration of T. Theodore Cruz, the files and records in this case, and such further evidence as may be received by the Court.

Dated:  December 24, 2014                                  Respectfully submitted,

By:_____/s/_____
T. Theodore Cruz
Attorney for Plaintiff
ROBIN PEARSON

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION AND STATEMENT OF FACTS[1]**

In August of 2013, plaintiff Robin Pearson filed a complaint in state court against Green Tree Servicing, LLC ("Green Tree") (a self-described debt collector and subservicing agent on the loan) alleging it violated California's Homeowner's Bill of Rights ("HBOR") by recording a notice of default while her application for a loan modification was pending.  The Contra Costa County Superior Court issued a preliminary injunction enjoining the trustee sale pending a resolution on the merits.  On December 13, 2013, Green Tree's counsel informed plaintiff's counsel that Green Tree filed a notice of rescission of the notice of default a month earlier, on November 12, 2013. Thereafter, it continued to aggressively litigate the case for approximately a year.

---

[1] For a more detailed version of the facts, please see the complaint and amendment to complaint (Docket #1, pgs. 7-20).

- 1 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

On September 12, 2014, Plaintiff filed a DOE amendment adding Bank of American, N.A. ("BANA") (the primary mortgage servicer) and Federal National Mortgage Association ("Fannie Mae") (the owner of the loan) as defendants to the suit. Green Tree removed the case to this court on October 9, 2014. BANA, not Green Tree, then filed a motion to dismiss the complaint as moot since the notice of rescission had been recorded a year earlier. Green Tree and Fannie Mae joined in the motion. At the hearing on the motion on November 20, 2014, this court dismissed the complaint on the ground it was moot. However, the complaint was dismissed without prejudice to allow plaintiff to file this herein motion for attorney's fees and costs since, having obtained injunctive relief in state court, it was the prevailing party. (Docket # 25). Plaintiff hereby submits this motion pursuant to the Court's order.

II.   **PLAINTIFF IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY FEES AND COSTS**

Plaintiff obtained a TRO and preliminary injunction in the state court. (Docket # 16, pg. 6). Under Civil Code section 2924.12(h), a court may award a prevailing borrower reasonable attorneys fees and costs. A borrower is defined as a prevailing party if the borrower obtained injunctive relief or was awarded damages. Accordingly, this court has already determined that plaintiff is entitled to request fees and costs. (Docket #25).

III.   **PLAINTIFF'S REQUESTED ATTORNEY FEES ARE REASONABLE**

    **A. Code of Civil Procedure §1021.5 Requires a Fully Compensatory Fee**

The relevant part of section 1021.5 states:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

The fundamental objective of private attorney general fee statutes is "to encourage

- 2 -
PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

suits effectuating a strong public policy by awarding *substantial* attorneys' fees…to those who successfully bring such suits." Woodland Hills Residents Assoc. v. City Council of Los Angeles (1979) 23 C3d 924, 933 (emphasis added); San Bernardino Valley Audubon Soc'y v. County of San Bernardino (1984) 155 CA3d 738, 755 (fee award must be large enough to "entice competent counsel to undertake difficult public interest cases"). That purpose is met by ensuring attorneys who vindicate important statutory rights that they will receive fully compensatory fee awards when their lawsuits are successful. Serrano v. Unruh (Serrano IV) (1982) 32 C3d 621, 632.

Fee awards under CCP section 1021.5 may be combined with awards based on other statutes or theories. Perez v. Safety-Kleen Sys., Inc. (ND Cal, Mar. 15, 2010, No. C 05-5338 PJH) 2010 US Dist Lexis 23612, *11 (fees awarded under both Lab C section 226 and CCP section 1021.5), aff'd (9th Cir. 2011 448 Fed Appx 707 (unpublished opinion). Moreover, section 1021.5 applies in federal court actions. *Ibid.* Accordingly, plaintiff hereby moves for attorneys' fees and costs pursuant to both Civil Code section 2924.12(h) and CCP section 1021.5 since she has met the requirements for both statutes.

**B.  Plaintiff's Fee Request Is Based on the Lodestar/Multiplier Method**

The amount of any award under section 1021.5 must be determined by the "lodestar/multiplier" method. Serrano v. Priest (Serrano III) (1977) 20 C3d 25, 48. Under this method, the base or "lodestar" is determined by multiplying the number of hours reasonably expended by the reasonable hourly rate for these services. 20 C3d at 48. The lodestar also includes compensation for time spent obtaining fees: "Absent special circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours reasonably spent, including those relating solely to the fee." Ketchum v. Moses (2001) 24 C4th 1122, 1133 (emphasis in original).

After the lodestar figure is determined, the Court must consider other factors that go into the determination of a reasonable attorney's fee, such as contingent risk: "The unadorned lodestar reflects the general local hourly rate for a *fee-bearing* case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." Ketchum, 24 C4th at 1138. The goal is to arrive at a reasonable attorney fee that

compensates attorneys by the same marketplace standards that apply to other litigation of comparable difficulty and importance. Serrano IV, 32 C3d at 643.

### C. A Summary of Plaintiff's Fee Request

Plaintiff's fee claim is fully documented by detailed, contemporaneous time records showing how each hour of work was spent; by careful descriptions of counsel's qualifications; and evidence of local market rates for comparable work. Counsel also documented his work on the fee motion to date, to be supplemented for further fees incurred on this motion. (see declaration of T. Theodore Cruz). Applicable non-lodestar factors and how the local legal marketplace compensates for them are also documented.

Plaintiff's lodestar is summarized in the following chart:

| Attorney (Rate = $200 per hour) | Litigation: 8/12/2013—12/16/2013* *Rescission notice rec'd | | Litigation: 12/17/2013—present | | Fee Motion: | |
|---|---|---|---|---|---|---|
| | Hours | Lodestar | Hours | Lodestar | Hours | Lodestar |
| T. Theodore Cruz | 113.0 | $22,600.00 | 112.3 | $22,460.00 ($2,700.00 credit) = $19,760.00 | 28.6 | $5,720 |

Plaintiff's summary of costs is as follows:

From 8/12/2013—12/13/2013:  $1,739.17

From 12/14/2013—present:      $267.90

To achieve a fee that truly reflects market value, plaintiff also requests that a 2.0 lodestar enhancement and/or an enhancement to the prevailing market rate of $400 per hour be applied to the merits portion of her lodestar based on the enhancement factors discussed below. No lodestar enhancement is sought for counsel's fee-related work.

### D. Counsel's Hours Are Reasonable

Under California law, plaintiff's counsel is entitled to be compensated for "*all* the

- 4 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

hours reasonably spent." Ketchum, 24 C4th at 1133. Where, as here, plaintiff's counsel obtained "excellent results," he is entitled to a fully compensatory fee: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." Feminist Women's Health Ctr. v. Blythe (1995) 32 CA4th 1641, 1674.

Under this standard, compensation is appropriate for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." Moore v. Jas. H. Matthews & Co. (9th Cir. 1982) 682 F2d 830, 839. "The measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." Norman v. Housing Auth. (11th Cir. 1988) 836 F2d 1292, 1306.

Every hour claimed by plaintiff is compensable for the following reasons:
First, plaintiff's claim is fully documented by detailed time records. (Cruz decl.) These time records are "the starting point for [the trial court's] lodestar determination." Horsford v. Board of Trustees (2005) 132 CA4th 359, 397. "The verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." 132 CA4th at 396. See also Perkins v. Mobile Housing Bd. (11th Cir 1988) 847 F2d 735, 738 (counsel's "sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case").

Second, counsel used substantial "billing judgment" by excluding any time that might be considered excessive, redundant, or otherwise unnecessary. (Cruz decl.)

Third, Green Tree, Bank of America, and Fannie Mae have been aggressively represented by a major law firms.[2] (Cruz decl.) While they had every right to do so, they now must bear the

---

[2] Bank of America was represented by Bryan Cave. Fannie Mae and Green Tree is represented by RCO Legal, which is one and the same with defendant Northwest Trustee Services, which has offices across the United States. RCO Legal specializes in foreclosure litigation.

- 5 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

resulting fees: "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." Copeland v. Marshall (DC Cir. 1980) 641 F2d 880, 904 (en banc).

Fourth, all of plaintiff's requested hours were reasonably spent. (Cruz decl.) Mr. Cruz's declaration provides a detailed, step-by-step summary of the various tasks that required counsel's time. This included substantial legal research and briefing to enjoin the foreclosure sale via an exp parte application at the eleventh hour, reviewing and analyzing voluminous documents during discovery, conducting a protracted discovery process, and responding to a notice of removal to federal court followed immediately by defendants' joint Rule 12(b)(6) motion to dismiss while protecting his client's eligibility to request fees and costs despite the complaint being mooted. Consequently, the number of hours spent compares very favorably to those found reasonable in many other cases.

Fifth, this case was efficiently litigated. Mr. Cruz handled the entirety of the work by himself. Finally, plaintiff's success was complete.

### E. Counsel's Hourly Rates Are Reasonable

Courts affirm billing rates that are "within the range of reasonable rates charged by and judicially awarded to comparable attorneys for comparable work." Children's Hospital & Med. Ctr. V. Bonta (2002) 97 CA4th 740. Although in the instant case plaintiff counsel's hourly rate of $200 per hour is more than reasonable, it is actually below market rate for a 15-year litigation attorney with comparable skill, reputation, and experience for similar work. For example, the court in Russell v. Foglio (2008) 160 CA4th 653 affirmed a $300 rate for a third year associate. Consequently, counsel asks for an enhancement to the prevailing rate in the community to $400 per hour. (George decl., Cruz decl.)

### F. Plaintiff's Requested Lodestar Enhancement Is Reasonable

- 6 -
PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

Plaintiff's lodestar represents the fee that would have been paid by a fee-paying client, win or lose, and without consideration for such factors as contingent risk: "The unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." Ketchum, 24 Cal. 4th at 1138. To determine a fee that truly reflects the legal marketplace, factors in addition to hours and rates must be considered. See Horsford, 132 Cal. App. 4th at 399. In the instant case, those factors fully support plaintiff's request for a 100 percent lodestar enhancement (a 2.0 multiplier) and/or an enhancement of her counsel's billing rate to the prevailing market rate of $400 per hour. (see Cruz decl. and declaration of Virginia M. George). Those factors include the following:

**1. The Great Risk Counsel Took Warrants a Significant Lodestar Enhancement**

In the legal marketplace, an attorney who takes a significant risk – whose compensation is wholly dependent upon achieving success for his client – demands and gets a higher fee than an attorney who is paid a market rate without contingency. Ketchum, 24 C4th at 1132. A risk enhancement is not a bonus or a windfall, it is "*earned compensation;* unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a *premium* for the risk of non-payment or delay in payment of attorney fees." *Id.,* 24 C4th at 1138.

If attorneys are not compensated for their risk, they do not receive the fair market value for their work and will be reluctant to accept future cases:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases. Ketchum, 24 C4th at 1132.

Risk enhancements are especially necessary in hard-fought cases like this one,

- 7 -

where a favorable outcome is uncertain. See Amaral v. Cintas Corp. No. 2 (2008) 163 CA4th 1157, 1218 ("Cintas takes an unduly narrow view of the concept of "'contingent risk.' It is not simply that counsel turned away paid work for a time in order to represent the class, but that counsel risked never receiving compensation at all. The claims and defenses in this case raised a significant number of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues and thus would not recover a full fee").

In this case, counsel's ability to recover any compensation for any of his many hours of work was entirely dependent on winning the case and obtaining a fee award since his client, by virtue of being a loan borrower in financial distress seeking a loan modification during the economic crisis, would not be able to pay his fees. Also, a significant obstacle had to be overcome in that Green Tree and Fannie Mae had far greater resources that allowed Green Tree to unnecessarily prolong the litigation in order to dilute counsel's fees. Consequently, this was a risky case. Attorneys do not commit that much uncompensated time to a case without the expectation of a fee award that will compensate them for such a significant risk.

Furthermore, risk enhancements are essential to California Code of Civil Procedure section 1021.5's purpose of enticing competent counsel to take important cases:

> The purpose of a fee enhancement, or so-called multiplier…is to bring the financial incentives for attorneys enforcing important…[rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis. Ketchum, 24 Cth at 1132.[3]

Correlatively, risk enhancements also serve to hold large, financially powerful institutions like Green Tree and Fannie Mae accountable. Horsford v. Board of Trustees (2005) 132 CA4th 359, 400. This is particularly important in light of the continuing acts of foreclosure fraud perpetrated by mortgage

---

[3] CCP section 1021.5 is applicable to this case since plaintiff's suit under the Homeowner Bill of Rights qualifies as public interest litigation. The section applies in federal courts as a remedy for violations of state law. Perez v. Safety Kleen Sys., Inc. (ND Cal, Mar. 15, 2010, No. C 05-5338 PJH) 2010 US Dist Lexis 23612, aff'd (9th Cir. 2011) 448 Fed Appx 707 (unpublished opinion).

servicers during the foreclosure crisis in California and nationwide.

### 2. The Novelty and Difficulty of the Action Warrant a Lodestar Enhancement

A lodestar enhancement also is appropriate based on the novelty, difficulty, and complexity of the action, and the skill displayed in presenting it.  See Amaral, 163 CA4th at 1218.  Here, the Homeowner Bill of Rights only recently became effective on January 1, 2013.  However, not only was plaintiff's counsel able to obtain a TRO and preliminary injunction to stop the foreclosure eight months later, but he obtained it with very little time at the eleventh hour.  (see Cruz decl.)

Green Tree probably would have prolonged that state court litigation indefinitely except for the fact that plaintiff's counsel joined Bank of America and Fannie Mae as DOE defendants in the state court action.  Faced with the prospect that their roles as "silent employers" who had been retaining low level unknown mortgage servicers like Green Tree to do their dirty work for them, those defendants finally decided to remove the case to this court and immediately file their joint motion to dismiss in order to prevent discovery, thereby protecting their business reputations and avoiding further liability with the DOJ.

This case is novel because there is little case law that interprets its safe harbor provisions.  As mentioned by the court in its order (Docket #25), even though this action has been dismissed as moot, this is the unique and rare case where plaintiff is nevertheless the prevailing party who is entitled to fees.  Obtaining the opportunity to file this motion for fees was not an easy task.  This court found no other cases where plaintiffs received attorney's fees under the HBOR.  Green Tree's plan was to record the notice of rescission to avail itself of the safe harbor defense, prolong the litigation for a year to starve out plaintiff and dilute her attorney's fees, and eventually join with its co-conspirators to dismiss the complaint as moot.  Had plaintiff's counsel not seen the

- 9 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

trap laid by Green Tree, his client would not have been able to file this herein motion.[4]

Furthermore, even though Bank of America held back its legal citations regarding the mootness issue until its reply brief (as explained in plaintiff's supplemental response, Docket # 22), plaintiff's counsel saw through that pitfall and was able to have the court dismiss the complaint without prejudice until this herein motion is heard. (Docket #25).

A further novel issue presented by the safe harbor provision and to be litigated by this motion is whether attorney's fees are compensable to the date when the notice of rescission was recorded, or to the date of conclusion of this litigation since it was unnecessarily prolonged by Green Tree. It might be argued that since there is little case law interpreting the HBOR, plaintiff has been treading in untested waters every step of the way.

This litigation was difficult because Green Tree aggressively fought plaintiff at every turn. For example, it refused to provide any meaningful responses to plaintiff's discovery requests, thereby necessitating additional rounds of follow-up requests to address evasive responses. When those attempts were unsuccessful, plaintiff was forced to use the court's discovery facilitator program.[5] Because the discovery facilitator was personally biased against plaintiff, she issued a recommendation that plaintiff be sanctioned if she presented her discovery dispute to the court on the basis it was groundless. (see Cruz decl.)

Plaintiff nevertheless filed her motion to compel discovery with the court. After reviewing the merits of the motion, the court disregarded the facilitator's recommendation and

---

[4] Unlike in state court (see, *e.g.,* Shisler v. Sanfer Sports Cars, Inc. (2008) 167 CA4th 1, 3), federal courts must have jurisdiction over the action to award fees.

[5] Due to the state budget crisis, the Contra Costa County Superior Court requires litigants to present discovery disputes to local volunteer attorneys (discovery facilitators) for resolution. The facilitators can only make recommendations, not binding orders. If either of the parties does not agree to the facilitator's recommendations, only then may it file a motion to compel discovery directly with the court. Consequently, the program adds an additional layer of litigation which wastes the time and resources of the moving party if its opponent strategically engages in delays and obstructionist tactics.

- 10 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

ordered Green Tree to pay plaintiff's attorney fees for his work associated in preparing the motion. (Docket # 16, pg. 3).[6] It could be argued that the legislature intended to financially attract attorneys with this type of skill, perseverance, and tenacity to take on HBOR cases in order to protect homeowners who are being unlawfully foreclosed from their homes.

### 3. The Results Obtained Warrant a Lodestar Enhancement

Most cases seem to require that success be "exceptional" to justify a lodestar enhancement based on the level of success achieved. See, *e.g.,* Thayer vs. Wells Fargo Bank (2001) 92 CA4th 819, 838, 112 CR2d 284. Under this standard, however, a party need not obtain every form of relief sought or win every argument to obtain an enhancement for results obtained. See, *e.g.,* In re Lugo (2008) 164 CA4th 1522, 80 CR3d 521 (plaintiffs lost some relief on appeal but enhancement based largely on results obtained still affirmed; Leuzinger v. County of Lake (ND Cal, March 27, 2009, No. C 06-00398 SBA) 2009 Dist Lexis 29843, at *28 (plaintiff's failure to succeed on all her claims does not show results "unexceptional"). A plaintiff may obtain excellent results without receiving all the relief requested. Sorenson v. Mink (9th Cir. 2001) 239 F3d 1140, 1147.

Here, plaintiff received all the relief she requested. She obtained injunctive relief to stop the foreclosure. Green Tree recorded the notice of rescission. Plaintiff was determined by the court to be the prevailing party who is eligible for fees and costs.

"Success" can include the broader effects of the litigation. In assessing the quality of the results achieved, courts are not limited to considering the formal relief ordered by the court or obtained through settlement: Other benefits that flow as a result of the litigation may also be considered. For example, in Aguirre v. Los Anegles Unifed School District (9th Circ. 2006) 461 F3d 1114, the court recognized that success may include "'other tangible results – such as sparking a change in policy or establishing a finding of fact.'" 461 F3d at 1121. Success may also be measured by the deterrent effect on defendants (insurance companies). Chabner v. United of

---

[6] Green Tree did not file an opposition to plaintiff's motion to compel and for sanctions.

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

Omaha Life Insurance Co. (ND Cal, Oct 12, 1999, No. C-95-0447 MHP) 1999 US Dist Lexis 16552, at *19, aff'd (9th Cir. 2000) 225 F3d 1042.

In determining a lodestar adjustment, the trial court should consider not only the size of the recovery, but also the need to encourage settlement, reward attorneys for maximizing their clients' recoveries, and promote the private enforcement necessary to vindicate many legal rights. Lealao v. Beneficial Cal., Inc. (2000) 82 CA4th 19, 50, 97 CR2d 797.  See also Edgerton v. State Personnel Board (2000) 83 CA4th 1350, 1362, 100 CR2d 491 (especially noting defendant's unreasonable refusal to accept reasonable settlement terms as justification for multiplier).  The "results obtained" factor must be analyzed in terms of its effect on the determination of a reasonable attorneys fee, *i.e.,* why the results obtained warrant a fee that exceeds the lodestar).

### 4. The Extent to Which the Conduct of Green Tree's Attorney Made Much of the Litigation Unnecessary Warrants a Lodestar Enhancement

In EnPalm, LLC v. Teitler  (2008) 162 CA4th 770, 775, the court upheld a lodestar reduction based on a finding that the prevailing attorney's conduct made much of the litigation unnecessary.  By the same token, the court should apply a positive multiplier to the prevailing party's lodestar when the losing party, such as Green Tree here, unnecessarily protracts the litigation.   In Rogel v. Lynwood Redevelopment Agency  (2011) 194 CAth 13, 19, 1330, the court confirmed this policy by stating that "…if a government defendant knows it can drag out litigation without consequence where the opposing party's lawyers are pro bono and cannot collect their full fees, the defendant will have less incentive to cooperate. This would all inure to the detriment of parties who need pro bono counsel and to the court system itself.

### G. The Importance of the Case to Plaintiff, the Public, and the Courts Warrants an Award of Post-Rescission Fees and Costs

The safe harbor provision of the HBOR states that "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and

remedied prior to the recordation of a trustee's deed upon sale.  Cal. Civ. Code section 2924.12(c). Green Tree recorded the notice of rescission of notice of default on November 12, 2013.  However, its counsel did not inform plaintiff's counsel of the notice of rescission until December 16, 2013. (see Cruz decl.)  Furthermore, even though Green Tree knew it could immediately file a motion to dismiss the complaint as moot to end the case, it unnecessarily protracted the litigation for a year in state court until plaintiff served Bank of America and Fannie Mae with the summons and complaint.[7]  Green Tree will most likely argue that a strict reading of the safe harbor provision cuts off its liability for attorney fees on the date when it recorded the notice of rescission.  Plaintiff hereby requests the court to award fees and costs that she incurred throughout the entire litigation to the conclusion of this fee motion for the following reasons.

First, it is possible the legislature intended the safe harbor to exclude only liability for damages, and not attorney's fees, which are ancillary and not part of the main cause of the action itself.

Second, the legislature obviously intended the safe harbor to include only situations where mortgage servicers *make the opposing party's attorney aware* of the corrections or remedies they took.  Indeed, this court has already rejected Green Tree's (anticipated) argument and interpreted the safe harbor provision to square with logic, efficiency, and fairness.  At the November 20, 2014 hearing on defendants' motion to dismiss, this court verbally opined in dicta (without having yet received argument on the issue) that plaintiff's fees would be compensable to the date when Green Tree's counsel informed plaintiff's counsel of the rescission, not the date the rescission was recorded.  Accordingly, this court has rejected a strict reading of the safe harbor provision so that Green Tree can be liable for fees past the date the rescission was recorded.

Third, Green Tree did not file a motion to dismiss the complaint as moot in the state court.  Consequently, it waived the protection afforded by the safe harbor provision.  Civil Code section 2924.12(a)(2) states:

---

[7] As stated in plaintiff's supplemental response in opposition to the defendants' joint motion to dismiss (Docket # 22) at footnote 1, Green Tree had prior knowledge of the notice of rescission / mootness issue because it was a co-defendant with Bank of America in Ellis v. Bank of America, N.A., No. CV 13-5257-CAS-(AGRx), 2013 U.S. Dist. LEXIS 157173 (C.D. Cal. Oct. 28, 2013).

- 13 -
PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

> Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. **An enjoined entity** may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied. (emphasis added).

If Green Tree insists on a strict reading of the safe harbor provision, then the above section strictly places the responsibility for dissolving the injunction and dismissing the complaint upon Green Tree as the "enjoined entity". Since it chose not to do so for strategic reasons, it cannot complain about the fees that it forced plaintiff to unnecessarily incur thereafter.[8]

Green Tree may then argue that plaintiff could have or should have filed the motion to dismiss the complaint on the ground it was moot. However, a plaintiff who voluntarily dismisses her own complaint waives the right to an award of attorneys fees.[9] Green Tree certainly would have made that argument and plaintiff's counsel could not have taken that risk for fear of engaging in legal malpractice.

Fourth, when it is shown that a defendant "sandbagged" the court, *e.g.,* by deliberately not raising a defense of lack of personal jurisdiction in hopes of receiving a favorable disposition on the merits, while keeping it as a challenge to any adverse decision by the court, that defense can be waived. Peterson v. Highland Music, Inc. (9th Cir. 1998) 140 Fec 1313, 1318. If a defendant misleads plaintiff into believing it will not raise a jurisdictional defense or misleads "the court into becoming involved in the case *so that there would be wasted judicial effort* were the case to be dismissed…or if defendant stalls in (raising the defense) because he wants to find out which way the wind is blowing, then conventional principles of waiver or equitable estoppels come into play…" American Patriots Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd. (7th Cir. 2004) 364 F3d

---

[8] A similar argument was made by the court in Serrano v. Unruh (Serrano IV) (1982) 32 C3d 621, 638, 186 CR 754 ("a defendant cannot litigate a fee motion tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response.")

[9] Although counsel found the legal citation for this holding, it was misplaced at the time of this writing. If found, it will be cited in plaintiff's reply papers.

- 14 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

884, 887-888.

Thus, in certain cases, a defendant's conduct can waive an otherwise non-waivable defense. Green Tree has waived the safe harbor provision here particularly because it does not rise to the level of a jurisdictional defense; it is only a defense to the monetary amount of its liability. The safe harbor provision was intentionally written to be general so that court's can apply a sensible reading of the statute to promote its purpose of consumer protection and court efficiency. This court should award plaintiff's fees accordingly.

Fifth, Green Tree <u>voluntarily paid plaintiff's attorneys fees after the rescission was recorded</u> in the amount of $2,700.00 on September 24, 2014 when it complied with the Contra Costa County Superior Court's order compelling responses to discovery and granting sanctions. (Docket #16, pg. 3) (see Green Tree payment attached to Cruz decl.) By not moving to dismiss the complaint as moot prior to or when the motion for sanctions was filed (and knowing it would not file an opposition thereto), it waived the safe harbor provision that limits a mortgage servicer's liability for attorneys fees when it corrects a violation of the HBOR. To allow a mortgage servicer to pick and choose which attorneys fees it will pay and which it will not pay after it has recorded a notice of rescission would circumvent the purpose of the HBOR.

Finally, the importance of the suit to plaintiff, the public, and the courts warrants an award of fees for counsel's work during the entire litigation. For example, the "importance of the suit" supports a 2.1 multiplier. <u>Coalition for L.A. County Planning v. Board of Supervisors</u> (1977) 76 Cal. App.3d 241, 251; see also, <u>Amaral</u>, 163 CA4th at 1218. Here, the case's potential impact upon plaintiff and other mortgage loan borrowers in California is significant.[10] An appropriate

---

[10] Some of the nation's largest banks, including Bank of America, paid substantial fines as part of a national mortgage settlement with the U.S. Department of Justice and several states in 2010. Despite this, in August of 2014 Bank of America paid more fines as part of another settlement with the DOJ and several states for further abusive foreclosure practices. To avoid further fines, it appears the major lenders are farming their foreclosure work out to smaller, lesser known, and less solvent entities such as Green Tree.

award would serve as an effective deterrent to disreputable mortgage servicers. It would also encourage competent plaintiff attorneys to take on HBOR cases because their fees would not be diluted.

The effect on the court system is also significant. Green Tree is treating this as a test case on behalf of the mortgage servicing industry.[11] If plaintiff only receives an award of fees for work done up to the date the notice of rescission was received by her counsel, then the entire mortgage servicing industry will engage in the same conduct taken by Green Tree. Mortgage servicers will intentionally violate the HBOR knowing they can record the notice of rescission and unnecessarily prolong the litigation in state court while starving out plaintiffs and diluting their attorney's fees. At the opportune time, they would remove the case to the safe harbors of the federal courts where they would move to dismiss the complaint as moot. Even in the uncertain event that the servicers were to become liable for an award of fees after the court was divested of jurisdiction to make rulings in the case, the reduced amount would be greatly offset by the substantial profit the servicers would recoup by foreclosing upon homes they could sell in the booming real estate market. Given the current state budget crisis and court layoffs, mortgage servicers should not be allowed to waste the time and resources of the state courts for such purposes. As the Rogel court stated, "this would all inure to the detriment of parties…*and to the court system itself.*"

**IV. THE COURT SHOULD ORDER GREEN TREE TO PAY INTERIM FEES TO PREVENT HARDSHIP TO PLAINTIFF**

Awarding interim fees is an accepted procedure in federal courts. See, *e.g.,* Hensley v. Eckerhart (1983) 461 US 424, 452 n9, 76 L Ed 2d 40 63 n9, 103 S Ct 1933. An application for interim fees can be requested any time after the moving party has obtained some of its objective,

---

[11] Unlike mortgage servicers in previous court cases (see, *e.g.,* the cases cited in Bank of America's reply supporting its motion to dismiss, Docket # 21), Green Tree did not move to dismiss the complaint as moot immediately after it recorded the notice of rescission.

- 16 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

even though other parts of the action remain to be resolved. To qualify for an interim award, the plaintiff must have prevailed on the merits at some interim stage. See <u>Hanrahan v. Hampton</u> (1980) 446 US 754, 757, 64 L Ed 2d 670, 674; <u>Marks v. Clarke</u> (9th Cir. 1996) 102 F3d 1012.

Entitlement to an interim fee award depends on obtaining relief under a fee-shifting statute at an interim stage of the litigation. If such relief is obtained, the party is entitled to prompt payment of its attorney fees for having achieved that success. "The fact that the dispute between the parties may continue does not preclude a fee award." <u>Marks</u> *supra,* 102 F3d at 1034. See, *e.g.,* <u>Taylor v. Westly</u> (9th Cir. 2008) 525 F3d 1288, 1289 (interim fees required because of "magnitude" of case and risk of "starving out" plaintiffs with meritorious claims). Under the federal rules, the court has the power to direct immediate payment of the interim fees when "delaying a fee until the entire litigation is concluded work substantial hardship on plaintiffs and their counsel." <u>Bradley v. School Bd.</u> (1974) 416 US 696, 723, 40 L Ed 2d 476, 495.

Plaintiff in this case is entitled to interim fees. The court has already determined her to be the prevailing party. Furthermore, as a loan borrower seeking a loan modification during the economic crisis, she has been in financial distress. Knowing this, Green Tree delayed filing the motion to dismiss for a year after recording the notice of rescission order to "starve her out". Even if plaintiff obtains a judgment for fees and costs, without an interim order it would be a considerable length of time before her attorney is paid his fees. Fannie Mae and Bank of America farmed out its foreclosure work to out-of-state entities like Green Tree in order to significantly frustrate or prevent collection of a judgment that loan borrowers may obtain.[12] In cases such as this, prompt payment would free borrowers from the debt they owe their attorneys. Their credit would not suffer and they would be in a better financial position to keep their homes.

Green Tree has implied that although it would not pay any judgment the court would render, it would comply with a court order to make prompt payment. (see Cruz decl.) Since Green Tree has no objections to an interim order, plaintiff requests that the court 1) issue an interim order that Green Tree remit attorney's fees and costs payable to plaintiff's counsel within 30 days; 2)

---

[12] Green Tree does not have any offices in California. Its corporate headquarters is in Minnesota. Despite the state court order to produce a copy of the insurance policy that would cover it for any liability in this action, Green Tree refuses to provide a copy of the policy.

- 17 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES

retain jurisdiction over this action to ensure compliance with the interim order; and 3) dismiss the complaint with prejudice and enter judgment only after Green Tree complies with the order.[13]

## V. CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court award reasonable attorney fees and costs in the amount requested (?), plus attorney fees incurred subsequently on this motion.

Respectfully submitted,

DATED:  December 24, 2014

By:       /s/
T. THEODORE CRUZ, ESQ.
Attorney for plaintiff Robin Pearson

---

[13] Green Tree paid the $2,700.00 in sanctions to plaintiff's counsel when the state court ordered it to remit payment within 30 days.

- 18 -

PLAINTIFF ROBIN PEARSON'S MOTION FOR COSTS AND FEES