UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBIN PEARSON,

        Plaintiff,

    v.

GREEN TREE SERVICING, LLC, et al.,

        Defendants.

Case No. 14-cv-04524-JSC

**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. No. 26

        Plaintiff Robin Pearson ("Plaintiff") brought this action to prevent foreclosure of her home. She sued Defendants Green Tree Servicing, LLC ("Green Tree"), Northwest Trustee Services ("Northwest"), Federal National Mortgage Association ("Fannie Mae"), and Bank of America, N.A. ("BANA") (together, "Defendants"), all of whom were involved in the servicing of Plaintiff's mortgage. Plaintiff alleged that Defendants had engaged in conduct that violated the California Homeowners Bill of Rights ("HBOR"), in particular, the provision that prevents "dual tracking"—the processing of loan modification requests and taking steps towards foreclosure at the same time.

        On November 21, 2014, the Court dismissed as moot Plaintiff's complaint on the grounds that Green Tree cured any HBOR violation by filing a Notice of Rescission of the Notice of Default on Plaintiff's property. *Pearson v. Green Tree Serv'g, LLC*, No. 14-cv-04524-JSC, 2014 WL 6657506, at *1 (N.D. Cal. Nov. 21, 2014).[1] Now pending before the Court is Plaintiff's

---

[1] Plaintiff and Defendants Green Tree, Fannie Mae, and BANA consented to the jurisdiction of a magistrate judge. (Dkt. Nos. 4, 10, 14.) Northwest filed a declaration of non-monetary status pursuant to California Civil Code § 29241 while this action was pending in Superior Court; neither Plaintiff nor any other party objected to the filing and Northwest did not participate in the federal court proceedings. Thus, under Section 29241(d) Northwest is a non-party in this action and its consent is not needed. (*See* Dkt. No. 1 at 33.)

United States District Court
Northern District of California

1   motion seeking attorneys' fees and costs from Green Tree.  (Dkt. No. 26.)  Green Tree opposes

2   Plaintiff's request for fees, arguing that Plaintiff is not eligible for attorneys' fees under the

3   circumstances presented and, to the extent that any fees are appropriate, Plaintiff should only be

4   allowed to recover fees associated with litigating the preliminary injunction in Superior Court.

5   (Dkt. No. 34 at 3.)  Having carefully considered the parties' submissions, the Court concludes that

6   oral argument is not necessary, *see* Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN

7   PART Plaintiff's motion for attorneys' fees and costs.

8                                  **BACKGROUND**

9       Much of the background of this case was already set forth in the Court's order dismissing

10  the complaint as moot.  *See Pearson*, 2014 WL 6657506, at *2-3.  Nonetheless, the Court will

11  reiterate here the procedural history relevant to the instant motion.

12      In August of 2013, Plaintiff filed a complaint in state court against Green Tree alleging a

13  dual-tracking violation of the HBOR by recording a Notice of Default on her property while

14  Plaintiff's application for a loan modification was pending.  (Dkt. No. 1.)  In September of 2013,

15  the Contra Costa County Superior Court issued a preliminary injunction enjoining the trustee sale

16  pending a resolution of Plaintiff's case on the merits.  (Dkt. No. 16 at 6.)[2]  Two months later,

17  counsel for Green Tree informed Plaintiff that Green Tree had recorded a Notice of Rescission of

18  the Notice of Default.  (Dkt. No. 7-4.)  Meanwhile, the litigation between the parties continued.

19      On September 12, 2014, Plaintiff amended her complaint to add BANA, the primary

20  mortgage servicer, and Fannie Mae, the owner of the loan, as defendants to this action.  (Dkt. No.

21  1 at 17.)  Defendants subsequently removed the case to federal court on October 9, 2014 based on

22  federal question jurisdiction in light of the addition of Fannie Mae as well as diversity jurisdiction.

23  _____

24  [2] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not
    subject to reasonable dispute because it:  (i) is generally known within the trial court's territorial
25  jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot
    reasonably be questioned."  Judicial notice is appropriate for matters of public record.  *Coto*
26  *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Green Tree asks the Court to take
    judicial notice of eight documents, which are either documents recorded in the Contra Costa
27  County Record's Office related to the subject property, or documents publicly filed in the Contra
    Costa Superior Court while this case was still pending there.  (*See* Dkt. No. 36.)  Given that these
28  documents are public records, and hearing no objection from Plaintiff, the Court GRANTS Green
    Tree's request for judicial notice of these documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (Dkt. No 1.)  BANA filed a motion to dismiss the complaint as moot on the ground that the Notice

2   of Rescission had cured any violation of the HBOR.  (Dkt. No. 5.)  Green Tree and Fannie Mae

3   later joined that motion.  (Dkt. No. 13.)

4          After a hearing, the Court granted the motion and dismissed the complaint as moot, but did

5   so without prejudice to allowing Plaintiff to file a motion for attorneys' fees and costs.  *Pearson*,

6   2014 WL 6657506, at *4.

**DISCUSSION**

**A.     Statutory Eligibility for Attorneys' Fees and Costs**

9          Eligibility for an award of attorneys' fees and costs on state law claims is a matter of

10  California law.  *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

11  California follows the so-called "American Rule," which provides that each party in a lawsuit is

12  ordinarily responsible for its own attorneys' fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

13  Courts may, however, award attorneys' fees when a party has sued under a contract that includes a

14  valid agreement for a fee award to the prevailing party, *First Nationwide Bank v. Summer House

15  Joint Venture*, 902 F.2d 1197, 1199 (5th Cir. 1990); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917,

16  924 (7th Cir. 1997), or pursuant to a statute or rule providing for the shifting of fees to the losing

17  party, *United States v. Standard Oil Co. of Cal.*, 603 F.2d 100, 103 (9th Cir. 1979).  Here, there is

18  no contractual basis for attorneys' fees.  Rather, Plaintiff seeks attorneys' fees and costs pursuant

19  to two separate statutes:  the HBOR and Section 1021.5 of the California Code of Civil Procedure.

20  Green Tree contends that neither statute can serve as a basis for the award of fees and costs that

21  Plaintiff requests.  The Court will address each statutory basis in turn, then will address separately

22  the scope of allowable recovery.

23         1.     Statutory Basis for Attorneys' Fees and Costs

24         During the course of this case, Plaintiff has invoked more than one provision of the HBOR

25  as grounds for her eligibility for attorneys' fees and costs.  When Plaintiff conceded that her case

26  was moot, she requested an award of fees and costs pursuant to Section 2924.12(i) (Dkt. No. 22 at

27  3); the Court determined that reasonable fees and costs would be available to Plaintiff as a

28  prevailing party under this subsection.  *See Pearson*, 2014 WL 6657506, at *4.  In the instant

3

motion, however, Plaintiff departs from her earlier argument without so much as referencing the change and now seeks fees and costs pursuant to a different provision:  subsection (h).  (Dkt. No. 26 at 3; Dkt. No. 39 at 2.)  Green Tree continues to assert that attorneys' fees are unavailable.  As set forth below, the Court concludes that Plaintiff is entitled to reasonable attorneys' fees and costs under subsection (i) only.

a.    *Section 2924.12(i)*

The Court has already concluded that Plaintiff is eligible for reasonable attorneys' fees and costs as a prevailing party.  As described in the Court's order dismissing the complaint, the HBOR provides a cause of action for borrowers to enjoin a material violation of the law's dual tracking provision, among others.  Cal. Civ. Code § 2924.12(a).  But the HBOR provides a "safe harbor" for servicers, which states that a servicer "shall not be liable for a violation that it [or a third party] has corrected and remedied prior to the recordation of a trustee's deed upon sale[.]"  *Id.* § 2924.12(c).  In other words, if the servicer takes action to correct the violation before proceeding to foreclosure, no liability results.  HBOR further provides, in relevant part, that

> [a] court may award a prevailing borrower reasonable attorney[s'] fees and costs in an action brought pursuant to this section.  A borrower shall be deemed to have prevailed for the purposes of this subsection if the borrower obtained injunctive relief[.]

*Id.* § 2924.12(i).

Plaintiff obtained injunctive relief in the form of a preliminary injunction enjoining foreclosure.  *Pearson*, 2014 WL 6657506, at *4.  Thus, under the plain language of the HBOR, which references injunctive relief generally and states no requirement that the relief be permanent, Plaintiff is a prevailing party.  The only question is whether the later dismissal of this action effectively reverses Plaintiff's prevailing-party status.  The Court has already determined that such is not the case:  based on the purpose of the HBOR—protecting borrowers—and the Ninth Circuit's direction that a preliminary injunction combined with a moot case can create "prevailing party" status despite the absence of a final judgment when it materially alters the parties' relationship and is based on the Plaintiff's reasonable likelihood of success on the merits, granting Plaintiff "prevailing borrower" status is appropriate here.  *Pearson*, 2014 WL 6657506, at *4

United States District Court
Northern District of California

1    (citing *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d at 712, 717 (9th Cir. 2013) and *Shapiro v.*

2    *Sage Point Lender Servs.*, No. EDCV 14-1591-JGB (KKx), 2014 WL 5419721, at *4 (C.D. Cal.

3    Oct. 24, 2014)); *see also Elder v. Nat'l Conf. of Bar Exam'rs*, No. C 11-00199 SI, 2011 WL

4    4079623, at *1 (N.D. Cal. Sept. 12, 2011) ("Ninth Circuit case law [ ] holds that a plaintiff who

5    succeeds on a preliminary injunction motion [in an ADA case] . . . is entitled to statutory

6    attorneys['] fees as a prevailing party even where a plaintiff's case is eventually dismissed as moot

7    and there is no final determination on the merits." (citation omitted)).  In other words, Plaintiff has

8    obtained preliminary injunctive relief, which the Court explicitly based on Plaintiff's likelihood of

9    success on the merits.  *Pearson*, 2014 WL 6657506, at *4.  The injunction forced Green Tree to

10   provide her with the very relief she sought in this action:  the termination of foreclosure

11   proceedings against her home.  *Id.*[3]  Under such circumstances, as a matter of law under the plain

12   language of the statute and in accordance with general Ninth Circuit law, Plaintiff has "prevailed"

13   and is therefore eligible for attorneys' fees.

14         Green Tree's arguments to the contrary are unpersuasive.  First, although the Court already

15   determined that subsection (i) is applicable, Green Tree now cites the same authority that all

16   Defendants included in their motion to dismiss in support of the proposition that the safe harbor

17   provision bars such recovery where a notice of rescission has been filed.  (*See* Dkt. No. 34 at 4

18   (citations omitted).)  But the Court already distinguished these cases on the grounds that none

19   involved a notice of rescission filed after a court granted the plaintiff-borrower's request for

20   injunctive relief.  *Pearson*, 2014 WL 6657506, at *4.  Green Tree does not offer any argument

21   why, contrary to the Court's reasoning, these cases are not distinguishable.  (*See* Dkt. No. 34 at 4.)

22   Moreover, Green Tree does not provide a citation to any new case in which a court addressed this

23   specific scenario (*see id.*), and the Court has found none.  Accordingly, the Court holds fast to its

24   earlier conclusion that Plaintiff is eligible for reasonable attorneys' fees and costs pursuant to

25

26   ───────────────────────

27   [3] In the order finding Plaintiff eligible for attorneys' fees and costs as a "prevailing party," the
     Court noted that it had not found any case that presents the particular situation at issue here—a
     motion for attorneys' fees and costs after the case is mooted by defendant's rescission of an
28   improper notice of default following the plaintiff obtaining preliminary injunctive relief.  *Pearson*,
     2014 WL 6657506, at *4.  This remains to be true as of the date of this Order.

1    Section 2924.12(i) of the HBOR.

2                    b.        *Section 2924.12(h)*

3            Rather than basing her request for fees on subsection (i), however, Plaintiff instead hinges

4    her motion for attorneys' fees and costs on Section 2924.12(h) of the HBOR.  (Dkt. No. 26 at 3;

5    Dkt. No. 34 at 2-4.)  This subsection provides that "[t]he rights, remedies, and procedures

6    provided by this section are in addition to and independent of any other rights, remedies, or

7    procedures under any other law.  Nothing in this section shall be construed to alter, limit, or negate

8    any other rights, remedies, or procedures provided by law."  As the "other rights . . . under

9    [another] law" to serve as the basis for attorneys' fees and costs for the purposes of this

10   subsection, Plaintiff points to Code of Civil Procedure Section 1021.5.  (*See* Dkt. No. 26 at 3.)

11           Section 1021.5, in turn, provides that a court may award attorneys' fees to a successful

12   party in a "private attorney general" action which (a) enforces an important right affecting the

13   public interest, and (b) confers a significant benefit (pecuniary or nonpecuniary) upon the general

14   public or a large class of persons, if (c) the necessity and cost to plaintiff in bringing its private

15   enforcement action outweighs its stake in the action.  Cal. Code. Civ. P. § 1021.5; *Woodland Hills*

16   *Residents Ass'n v. City Council*, 23 Cal.3d 917, 934-35 (1979).  Notably, plaintiffs typically

17   receive fully compensatory attorneys' fees under Section 1021.5—that is, courts award the entire

18   amount spent regardless of determining whether the amount was "reasonable," the limitation that

19   Section 2924.12(i) requires.  *See Serrano v. Unruh*, 32 Cal.3d 621, 632 (1982).

20           The purpose of an award of attorneys' fees pursuant to Section 1021.5 is "to encourage

21   suits that enforce 'common interests of significant societal importance, but which do not involve

22   any individual's financial interest to the extent necessary to encourage private litigation to enforce

23   that right." *Satrap v. PG&E*, 42 Cal. App. 4th 72, 78 (1996) (citation omitted).  In other words,

24   courts award fees pursuant to this section "when a significant public benefit is conferred through

25   litigation pursued by one whose personal stake is insufficient to otherwise encourage the action[,]"

26   not "as a method for rewarding litigants motivated by their own pecuniary interests who only

27   coincidentally protect the public interest."  *Id.*; *see also Flannery v. Cal. Highway Patrol*, 61 Cal.

28   App. 4th 629, 635 (1998) (noting that an award of attorneys' fees pursuant to Section 1021.5 is

United States District Court
Northern District of California

inappropriate where the primary effect of a lawsuit is to advance or vindicate a plaintiff's personal economic interest, even if some incidental public benefit results from the suit).  Thus, before awarding fees under Section 1021.5, "[t]he trial court must determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case."  *Howard v. First Horizon Home Loan Corp.*, No. 12-cv-05735-JST, 2013 WL 6174920, at *8 (N.D. Cal. Nov. 25, 2013).  Put another way, "[t]he trial court in its discretion must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney award fee under section 1021.5."  *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 566 (2004) (internal quotation marks and citation omitted).

The relief that this statute affords is outside of Plaintiff's reach.  Courts have repeatedly declined to impose Section 1021.5 fees for mortgage foreclosure cases, given that such suits really arise out of the individual plaintiff's personal financial stake in the subject property, rather than a matter of public interest.  *See, e.g.*, *Howard*, 2013 WL 6174920, at *8; *Manantan v. Nat'l City Mortg.*, No. C-11-00216 CW, 2011 WL 3267706, at *11 (N.D. Cal. July 28, 2011); *Garcia v. Fidelity Mortg. Co.*, No. C 05-05144 MHP, 2009 WL 1246921, at *3 (N.D. Cal. May 5, 2009); *Sanders v. Fidelity Mortg. Co.*, No. C 05-04990 MHP, 2009 WL 1246686, at *8 (N.D. Cal. May 5, 2009).  The only exception to this rule appears to be when a plaintiff includes a cause of action under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, which specifically provides for Section 1021.5 damages.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1107-08 (N.D. Cal. 2003) (noting that the court "may award attorney fees to a successful litigant in a UCL action" under Section 1021.5).  Here, Plaintiff has no UCL claim and the Court finds no basis to depart from the well-reasoned judgment of other courts that have denied Section 1021.5 damages in mortgage foreclosure cases.  *See Howard*, 2013 WL 6174920, at *8; *Manantan*, 2011 WL 3267706, at *11; *Garcia*, 2009 WL 1246921, at *3; *Sanders*, 2009 WL 1246686, at *8.  Just as in those cases, any public benefit at issue here is merely incidental to Plaintiff's personal interest in preventing the foreclosure of her home.  (*See* Dkt. No. 26 at 3-4.)

Plaintiff's arguments to the contrary are unpersuasive.  First, Plaintiff contends that she has

7

United States District Court
Northern District of California

1  met the requirement of showing that this action resulted in a significant public benefit "because

2  the prevention of wrongful foreclosures in California benefits all homeowners as well as plaintiff

3  here." (Dkt. No. 39 at 5; *see also id.* at 5 ("[P]revention of wrongful foreclosures is an important

4  right affecting the public interest.").) But Plaintiff has failed to identify how this action, a

5  challenge to the wrongful foreclosure of Plaintiff's property in particular, somehow translates into

6  broad protection against wrongful foreclosures more generally. To the extent that this case will

7  deter other servicers from engaging in dual tracking conduct in violation of the HBOR, this result

8  cannot be described as anything but secondary to the desired and actual core effect of this case:

9  preventing the foreclosure of Plaintiff's property. Indeed, "[c]ourts consider the 'substantial

10  benefit' criterion in the context of the outcome of the current litigation, and not on speculative

11  future events" like a possible deterrent effect. *Ctr. for Biological Diversity v. Cnty. of San*

12  *Bernardino*, 185 Cal. App. 4th 866, 895 (2010). The only benefit that "flowed directly and

13  immediately from" this action is the prevention of foreclosure of Plaintiff's home; any other

14  possible result is too attenuated. Thus, the instant case did not result in a "significant public

15  benefit" for the purposes of Section 1021.5. Given that the statute requires that all three factors

16  (significant public benefit, necessity and financial burden of private enforcement, interest of

17  justice) be present to support an award of attorneys' fees, the inquiry ends here. *See* Cal. Code.

18  Civ. P. § 1021.5.

19      Because Plaintiff is not eligible for attorneys' fees and costs under Section 1021.5, that

20  section cannot serve as the triggering statutory basis for attorneys' fees and costs under Section

21  2924.12(h) of the HBOR. Notably, there is no other statutory basis for an award of attorneys' fees

22  in this case; in a statutory action such as this one, California law provides that a prevailing party is

23  entitled to recover costs alone, not attorneys' fees. *See* Cal. Civ. Code § 1032(b). Accordingly,

24  Plaintiff is entitled to reasonable attorneys' fees and costs under Section 2924.12(i), not under

25  Section 1021.5.

26          2.      Scope of Recoverable Attorneys' Fees and Costs

27      Having determined that Plaintiff is eligible for reasonable attorneys' fees and costs under

28  Section 2924.12(i), the Court must address the scope of that recovery. Given the rationale for

8

finding Plaintiff eligible for fees and costs under this section—*i.e.*, the fact that she obtained a preliminary injunction that led to her desired result, rescission of the notice of default—it does not automatically follow that she may recover attorneys' fees and costs for work done during the entire life of this case, including all litigation that followed after that event, as Plaintiff requests. (*See* Dkt. No. 26 at 5.)  To the contrary, the Court concludes that Plaintiff is eligible for reasonable attorneys' fees and costs pertaining to work done on this litigation up until she received notice of the recording of the Notice of Rescission, as well as litigation on the instant motion.

This is the only interpretation that squares with the maxim that statutes must "be read as a whole[.]"  *United States v. Atl. Research Corp.*, 551 U.S. 128, 135 (2007).  The HBOR's safe harbor provision makes clear beyond cavil that a defendant is free from liability once an HBOR violation is cured.  Given that Plaintiff's case was clearly mooted by the safe harbor provision when Green Tree filed the Notice of Rescission—which afforded Plaintiff exactly the relief she sought in the complaint—an award of attorneys' fees for litigation thereafter would be neither reasonable nor just under subsection (i).  Thus, a plain reading of the statute should have led Plaintiff to the inexorable conclusion that her claim for relief was mooted once Green Tree cured its dual tracking violation by filing the Notice of Rescission.  Although Green Tree maintains that any recovery should be limited to costs and fees incurred up until the moment of the Notice of Rescission was actually recorded (Dkt. No. 34 at 6-7 ("[I]f the court is inclined to award discretionary fees . . . the fees should only be for the time spent obtaining the injunction[,] which would be through September 10, 2013.")), such a strict reading gives too short shrift to the realities of litigation.  That is, while generally speaking, publicly recording a document gives a party constructive notice, it would be unreasonable to expect Plaintiff to anticipate that the very same entity that was fighting tooth and nail in this action to proceed with foreclosure would simultaneously backtrack by rescinding the notice of default.

The Court is not persuaded by Plaintiff's argument that reading the statute as a whole compels the opposite result.  Plaintiff contends that the HBOR's safe harbor provision is relevant only to the availability of remedies or damages, not to the availability of attorneys' fees under subsection (i), such that "when the safe harbor provision is triggered, . . . [i]t does not prohibit or

reduce a prevailing borrower's entitlement to attorneys' fees." (Dkt. No. 39 at 3; *see also id.* at 2 (contending that, even though the case has been mooted, "plaintiff is still eligible for costs and fees because they are separate and distinct from the damages issue in the core action").) To be sure, attorneys' fees and damages are two separate awards governed by different subsections of the statute. *Compare* Cal. Civ. Code § 2924.12(c) (safe harbor provision governing liability), *with id.* § 2924.12(i) (attorneys' fees provision). But reading the statute as a whole, it cannot be that the legislature intended a borrower to recover attorneys' fees for work done long after the borrower's claims have themselves been extinguished.

Plaintiff's other arguments that fees for post-rescission litigation are appropriate fare no better. Plaintiff contends that when it comes to fee-shifting statutes, even where the language is discretionary—*i.e.*, the court "may" award fees—"prevailing plaintiffs in public interest litigation are 'ordinarily entitled' to reasonable attorney fees, and fees may be denied only when 'special circumstances' would render an award unjust." (Dkt. No. 39 at 4 (citation omitted).) Thus, Plaintiff argues that the HBOR, as a fee-shifting statute, somehow obligates the Court to award the full amount of fees that she now seeks. But this argument misses the mark. First, Plaintiffs cites several cases in support of this proposition, but her cases make clear that this "special circumstances" test applies to federal fee-shifting statutes and damages awards under Section 1021.5—neither of which is applicable here. *See Serrano*, 32 Cal. 3d at 632. Other cases that Plaintiff cites do not address this test at all, but rather—based on the unique legislative history of the particular statute—indicate that although the statutory language included the discretionary word "may," the award of attorneys' fees was still mandatory. *Jones v. Tracy Sch. Dist.*, 27 Cal. 3d 99, 109 (1980). Put simply, Plaintiff is barking up the wrong tree with this argument: the Court agrees that Plaintiff is entitled to attorneys' fees, and is not exercising discretion to decline to award fees. Thus, the Court's discretion is not being exercised with respect to whether to award fees under the word "may" in the statute, but rather in its determination of what amount is reasonable. In doing so, to square with the plain language and purpose of the statute, the Court is limiting the scope of recoverable attorneys' fees to those pertaining to work done in connection with the injunctive relief that Plaintiff obtained—*i.e.*, the result that triggers the statutory award of

10

attorneys' fees in the first instance—and other work up until Plaintiff should have known that this action no longer presented a live case or controversy.  This practice does not run afoul of the authority that Plaintiff cites.

Thus, the Court concludes that because the safe harbor provision of the HBOR mooted Plaintiff's case, which Plaintiff knew or reasonably should have known at the time she received notice that Green Tree had recorded a Notice of Rescission of the Notice of Default, Plaintiff may only recover attorneys' fees for all work done up until that point, as well as fees for litigating the instant motion.

**B.    Award of Attorneys' Fees and Costs**

Because the Court concludes that Plaintiff is entitled to attorneys' fees and costs under Section 2924.12(i), the sole issue before Court is the *amount* that should be awarded.  Plaintiff requests $92,447.07 in attorneys' fees and costs.  (*See* Dkt. No. 27 ¶ 24; *see also* Dkt. No. 34 at 3.) This total is twice the full amount of attorneys' fees actually expended on her case.  Green Tree contends that the Court should award only a portion of that amount.

1.    Legal Standard

"[A] court assessing attorneys['] fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001) (internal quotation marks omitted); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.").

"In determining the reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987).  The relevant community for the purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  In terms of the reasonable amount of time spent, the Court should only award fees based on "the number of hours

11

United States District Court
Northern District of California

reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. "There is no precise rule or formula for making these determinations[,]" and "[t]he court necessarily has discretion in making this equitable judgment." *Id.* at 436-37.

"Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (2001) (citation omitted).

　　　2.　　<u>Analysis</u>

Plaintiff seeks attorneys' fees for all work done in this case, from the time she initiated this action in Superior Court through the instant motion for attorneys' fees and costs. (*See* Dkt. No. 26 at 5.) In total, Plaintiff seeks $92,447.07 in fees and costs. Broken down, Plaintiff's lodestar request is $22,600.00 in attorneys' fees up until the date that Plaintiff received notice of Green Tree's Notice of Rescission on December 16, 2013; $22,460.00 in attorneys' fees for litigation since that date; and, separately, $5,720.00 in attorneys' fees for briefing the instant motion. (*Id.*) Plaintiff also seeks an enhancement of that lodestar amount; specifically, Plaintiff asks the Court to double the fee amount due to (1) the great risk counsel took in taking a contingency fee case; (2) the novelty and difficulty of the case; (3) the results obtained; and (4) the extent to which counsel for Green Tree made much of the litigation unnecessary. (*Id.* at 9-13.) Plaintiff also argues that it is appropriate to award attorneys' fees and costs for the period *after* Green Tree rescinded the Notice of Default despite the HBOR's safe harbor provision, which as described above, provides that borrowers are not entitled to damages after a defendant cures an HBOR violation. (*Id.* at 14-17.) In addition, Plaintiff seeks $1,739.17 in costs up until notice of rescission, and another $267.90 in costs from that date until the present. (*Id.* at 5.) Finally, Plaintiff seeks an order requiring Green Tree to pay interim fees. (*Id.* at 18.) The Court will address each request in turn.

a.     *Reasonable Hourly Rate*

"The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services.  This determination involves examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (internal quotation marks and citations omitted); *see also Camacho*, 823 F.3d at 979. The "relevant community" for the purposes of the instant application is the district in which the lawsuit proceeds.  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  "The fee applicant has the burden of producing satisfactory evidence . . . that the requested rates are in line with those prevailing in the community[.]"  *Jordan v. Multnomah Cnty.*, 815 F.2d, 1258, 1263 (9th Cir 1987).  In addition to affidavits from the fee applicant himself, other evidence of the prevailing market rate may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases.  *See Cotton*, 889 F. Supp. 2d at 1167 (citation omitted).  However, the actual rate that the fee applicant charged is not evidence of the prevailing market rate.  *Id.* (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quotation omitted)).

Here, Plaintiff asserts that the fee award in this case should be based on a rate of $400 per hour for her attorney, T. Theodore Cruz.  (Dkt. No. 26 at 5.)  Green Tree contends that Mr. Cruz's actually billed rate of $200 per hour is more appropriate.  (Dkt. No. 34 at 6.)  The Court concludes that a reasonable rate of compensation in this matter is $400 per hour.

In support of her motion, Plaintiff has submitted declarations from two attorneys, the first of which is Mr. Cruz, who has been counsel of record in this matter from the outset of litigation. (Dkt. No. 27 ¶2.)  Having earned a J.D. and an LL.M., Mr. Cruz has been practicing law in California for fifteen years and was admitted to practice in this District in 1997.  (*Id.*)  Mr. Cruz is a sole practitioner who has experience litigating in a wide range of subject areas, including contracts, real property, insurance coverage, medical malpractice, employment, and commercial law.  (*Id.* ¶ 3.)  Although Mr. Cruz billed Plaintiff $200 per hour for his services in this matter, he avers that $400 per hour is the typical market rate for this type of case from a lawyer of similar skill and experience as Mr. Cruz.  (Dkt. No. 27 ¶ 3; Dkt. No. 26 at 8.)  While Mr. Cruz does

13

1    discuss the prevailing rate in the proper locale, he does not provide any further explanation for his

2    opinion that a $400 hourly rate is reasonable.

3          Plaintiff also has submitted the declaration of Virginia M. George, a partner in a local law

4    firm that is not affiliated with Mr. Cruz.  (Dkt. No. 28.)  Ms. George has been practicing law in

5    California since 1986, and her roles have included serving as a deputy district attorney; teaching

6    evidence, criminal procedure, and wills and trusts; representing senior citizens who had been

7    financially abused; serving on the county probate bench; and, since 2011, litigating matters

8    involving trust administration, probate, conservatorship, and guardianship matters.  (*Id.* ¶¶ 1-2.)

9    Ms. George's law firm also handles real estate matters, and she has handled fee requests on her

10   firm's behalf.  (*Id.*)  Ms. George states that she is familiar with Mr. Cruz and that he is known as a

11   competent attorney.  (*Id.* ¶ 2.)  Like Mr. Cruz, Ms. George asserts that $400.00 per hour is "quite

12   reasonable for a litigation attorney with fifteen years of experience and within the market range for

13   comparably qualified and experienced attorneys handling comparable litigation in the Contra

14   Costa/Alameda County areas"—areas that are indisputably part of the Northern District of

15   California.  (*Id.* ¶ 2.)

16         Both attorneys' declarations provide support for Plaintiff's requested rate.  First, both

17   declarations discuss the rate in the relevant legal market.  *Cf. Schwarz*, 73 F.3d at 908 (rejecting as

18   unhelpful to a fee inquiry information about similarly qualified attorneys in markets other than the

19   relevant community).  Ms. George's declaration explicitly states that she has worked on fee

20   motions for her firm, which handles litigation involving real property, and that the $400 rate is

21   appropriate for such cases for a lawyer of Mr. Cruz's experience.  Taken together, the Court finds

22   that these declarations provide support for Plaintiff's requested $400 hourly rate.

23         Plaintiff does not address whether this rate is commonly awarded by other judges in the

24   Northern District for similar cases tried by attorneys with comparable experience.  Green Tree

25   does not address this issue, either.  But the Court conducted its own review, and found that other

26   courts in this District have determined that rates ranging from $180 and $425 per hour are

27   appropriate in wrongful foreclosure cases for attorneys with similar breadth and length of

28   experience.  *Mitchell v. Wells Fargo Bank, N.A.*, No. 13-04017-KAW, 2014 WL 1320295, at *4

United States District Court
Northern District of California

United States District Court
Northern District of California

(N.D. Cal. Apr. 1, 2014) (finding $290/hour to be a reasonable hourly rate for an attorney with 15 years of experience litigating an HBOR case); *Sami v. Wells Fargo Bank, N.A.*, No. C 12-00108 DMR, 2012 WL 3204194, at *6 (N.D. Cal. Aug. 3, 2012) (finding $320/hour to be a reasonable hourly rate for an attorney with 18 years of experience in a wrongful foreclosure action alleging various state law claims, but none under HBOR); *Makreas v. First Nat'l Bank of No. Cal.*, No. 11-cv-02234-JST, 2014 WL 2582027, at *6 (N.D. Cal. June 6, 2014) (finding hourly rates ranging from $180 to $425 per hour reasonable for time spent on a foreclosure case). These exemplars provide further support for the reasonableness of Plaintiff's requested $400 per hour rate.

Green Tree requests that the $200 per hour rate govern. But Green Tree does not offer any evidence or explanation why that should be the case, other than the fact that it was the actual rate charged, which is no consequence in the analysis. *See Cotton*, 889 F. Supp. 2d at 1167. Given the lack of meaningful objection, the declarations that Plaintiff submits along with prior cases from this District sufficiently establish that the requested $400 per hour rate is reasonable.

    *b.*  *Reasonableness of Time Spent*

With respect to the hours spent, Mr. Cruz avers that he spent a total of 225.3 hours on this matter. (Dkt. No. 26 at 5.) For the reasons explained above, the Court concludes that Plaintiff is only entitled to fees for work done up to the date that Plaintiff received notice of the Notice of Rescission that mooted this action; among the hours billed, 113 were for work during this period. (*See id.*) Green Tree seeks to reduce this number, contending that a variety of billing entries are unreasonable. Below, the Court addresses whether the time billed was reasonable.

      i.  Travel Time

Plaintiff's counsel has submitted a number of invoices, some of which reflect that he seeks to recover attorneys' fees to compensate time he spent traveling for this case. Green Tree argues that Mr. Cruz's travel time should not be compensated, let alone at the professional rate, so the total number of billable hours should be reduced to exclude travel time or the rate should be reduced. The Court declines to make either reduction.

Generally, courts in this Circuit do not compensate travel time at a lower rate than time billed for other tasks, so long as the travel time is considered reasonable. *See, e.g.*, *Defenbaugh v.*

15

1   *JBC & Assocs.*, No. C-03-0651-JCS, 2004 WL 1874978, at *12 (N.D. Cal. 2004) (compensating

2   travel time at full professional rate); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1178 (D. Nev. 1999)

3   (compensating travel time at the full professional rate because attorneys are entitled to bill for lost

4   productivity during travel, but limiting billable travel time to six hours within any 24-hour period,

5   for "in the court's experience, most attorneys would be satisfied with six hours of billable time at

6   the end of any working day"); *Allen v. City of Los Angeles,* 1995 WL 433720, at *10 (C.D. Cal.

7   Jan. 13, 1995) ("The Court does not believe an arbitrary percentage reduction on all hours claimed

8   for travel is appropriate.  Rather, the Court has either allowed or disallowed travel time depending

9   upon the purpose for the travel.").

10       Here, Mr. Cruz has billed 4.3 hours for travel on 2 days:  (1) August 16, 2013 for travel to

11   and from the County Recorder's office to retrieve real property records related to the subject of

12   this litigation; (2) August 21, 2013 time traveling to and from and waiting in the Superior Court to

13   file the complaint;   (Dkt. No. 29 at 1-4).  Although, as Green Tree points out, Mr. Cruz could

14   have engaged an attorney service to perform these tasks at potentially lower rates, this is not

15   required, particularly where, as here, time is of the essence and there is no room for error

16   inasmuch as the attorney is seeking emergency injunctive relief to prevent a fast-approaching

17   harm.  The Court finds this time to be reasonably well spent and therefore awards full fees for

18   these 4.3 hours.

19                              ii.        Non-Legal Activities

20       Green Tree next argues that Plaintiff should not be awarded fees for time spent on certain

21   activities that do not qualify as professional legal services.  Green Tree points to activities that

22   they contend "should be completed by a paralegal or legal assistance, at a lower rate than $200 an

23   hour" (Dkt. No. 34 at 7), in particular, 1.7 hours typing a transcript of a recorded telephone call

24   between Plaintiff and a Green Tree representative.  (Dkt. No. 34 (citing Dkt. No. 29 at 1-4.)  Mr.

25   Cruz, for his part, contends that this is merely another legal task that happened to be clerical, and

26   courts typically do not require a sole practitioner to vary his rates based on the type of task

27   performed.  (Dkt. No. 39 at 7-8.)

28       "Clerical and secretarial work is not compensable as attorneys fees."  *Campbell v. Nat'l*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010) (citing *Davis v. City of San*

2  *Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992)).  However, the Court concludes that this work

3  can be properly billed for two reasons.  First, the task was not quite clerical, like mere calendaring

4  and docketing work.  Rather, the work was appropriately done by counsel himself.  Mr. Cruz

5  began his work on this case just nine days before the scheduled trustee sale, and the recorded call

6  was highly relevant to establishing the likelihood of success on the merits for the purposes of

7  obtaining a temporary restraining order to prevent that sale, which the Superior Court did, in fact,

8  impose.  (*See* Dkt. No. 27 ¶ 8.)  Given the time constraints, it would be unreasonable to require

9  Mr. Cruz to farm out the work of reviewing the transcript to an outside source.  Moreover, 1.7

10  hours is a minimal amount of time; the Court could imagine compensating Mr. Cruz for merely

11  listening to the call repeatedly in order to prepare his case, so his fees should not be docked

12  because he prepared a transcript at the same time.  Thus, the Court will not reduce the billable

13  hours to remove this task.

14          iii.     Work Done on Claims Against BANA

15        Green Tree also asks the Court to exclude from the lodestar calculation 2.5 hours of work

16  associated with adding claims against BANA and Fannie Mae.  (Dkt. No. 34 at 9-10.)  A

17  prevailing party may be awarded attorneys' fees for work done on claims against co-defendants—

18  even unsuccessful, dismissed claims—so long as the claims are "related" to a claim on which the

19  party actually prevails.  *Hensley*, 461 U.S. at 434-45.  In determining whether the claims are

20  "related," the Ninth Circuit instructs courts to consider "whether the relief sought on the

21  unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from

22  the course of conduct that gave rise to the injury on which the relief granted is premised."

23  *Schwarz*, 73 F.3d at 903 (internal quotation marks and citations omitted).  In other words, the

24  focus is "on whether the unsuccessful and successful claims arose out of the same 'course of

25  conduct.'  If they didn't they are unrelated under *Hensley*."  *Id.*; *see also Stonebrae L.P. v. Toll*

26  *Bros., Inc.*, 521 F. App'x 592, 594 (9th Cir. 2013) (affirming district court's award of attorneys'

27  fees related to claims against dismissed co-defendant because the claims were related, the plaintiff

28  actually prevailed, and the claims "arose from the same course of conduct").  Under this test,

United States District Court
Northern District of California

1  Plaintiff may recover attorneys' fees for work done on claims against BANA and Fannie Mae,

2  since they arose from the same course of conduct as the claims against Green Tree.  The claims

3  are all related to Defendants' treatment of Plaintiff's loan, her eventual request for a loan

4  modification, and the later initiation of foreclosure proceedings.  (*See generally* Dkt. No. 1.)

5  Accordingly, the Court will not reduce the number of hours in the lodestar calculation on this

6  ground.

7                              iv.      Excessive or Duplicative Hours

8          Finally, Green Tree seeks a general 60% reduction in the number of billable hours on the

9  ground that Plaintiff's counsels' billing in this matter was excessive and duplicative.  "An attorney

10  fee award should include compensation for all hours *reasonably spent*[, which] means padding in

11  the form of inefficient . . . efforts is not subject to compensation."  *Rey v. Madera Unified Sch.*

12  *Dist.*, 203 Cal. App. 4th 1223, 1243 (2012) (internal quotation marks and citations omitted).  Thus,

13  in determining what number of hours are reasonably compensable, the "district court should

14  exclude hours that are excessive, redundant, or otherwise unnecessary."  *McCown v. City of*

15  *Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008) (citation omitted).  "To the extent a trial court is

16  concerned that a particular award is excessive, it has broad discretion to adjust the fee downward

17  or deny an unreasonable fee altogether."  *Ketchum*, 24 Cal. 4th at 1138.  If the court decides to do

18  so, however, it must "set forth a concise but clear explanations of its reasons" for the reduction—

19  whether it does so with respect to particular tasks or takes the "meat-axe" approach, reducing the

20  total number of hours by a given percentage.  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145,

21  1149 (9th Cir. 2001); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (noting

22  that the preferred method is to "disallow[ ] specific items of unreasonable activity and provid[e]

23  examples of excessive time spent on" tasks like legal research (citation omitted)).

24          The Court agrees that Plaintiff's invoices reflect some duplicative and excessive charges.

25  First, with respect to duplicative fees, the Court reduces the total recoverable hours by the 12.6

26  hours that Plaintiff's counsel spent relating to the motion to compel discovery in July of 2014, as

27  Green Tree already paid attorneys' fees on this motion in compliance with the order of the

28  Superior Court.  (*See* Dkt. No. 34 at 9.)  Allowing a double recovery of these fees would not be

1   reasonable; attorneys' fee awards are not meant to create a windfall for the prevailing party.

2   In addition, the Court is troubled by a number of entries in Mr. Cruz's billing invoices that

3   seem to be excessive.  For example, Mr. Cruz billed 39.4 hours to prepare a 10-page complaint.

4   (Dkt. No. 29 at 1-4.)  Although the HBOR is a relatively new law, Plaintiff's is far from the first

5   complaint alleging a dual tracking violation under that statute.  Similarly, counsel reported

6   spending 4.9 hours drafting a three-page application for a temporary restraining order, which

7   included a mere one-paragraph memorandum of points and authorities.  (Dkt. No. 29 at 1-3.)

8   These inflated numbers cast doubt on the rest of Mr. Cruz's billing practices.  The Ninth Circuit

9   has stated that a "district court can impose a small reduction, no greater than 10 percent—a

10  'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v.*

11  *City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Accordingly, after subtracting from the

12  113.1-hour total the 12.6 hours for work for which Plaintiff has already been reimbursed, the

13  Court will reduce the total number of hours by 10 percent.  In doing so, the Court finds that

14  Plaintiff's counsel is entitled to recover attorneys' fees for 99.1 hours of work.

15              *c.      Adjustments to Lodestar*

16  Plaintiff requests a 2.0 multiplier—a full doubling—of the lodestar calculation.  Under

17  California law, "the lodestar is the basic fee for comparable legal services in the community."

18  *Ketchum*, 24 Cal. 4th at 1132.  A court may adjust the lodestar "based on factors including . . . (1)

19  the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3)

20  the extent to which the nature of the litigation precluded other employment by the attorneys; [and]

21  (4) the contingent nature of the fee award."  *Id.*; *see also Thayer*, 92 Cal. App. 4th at 833.

22  Importantly, "[t]here is no hard-and-fast rule limiting the factors that may justify an exercise of

23  judicial discretion to increase or decrease a lodestar calculation."  *Thayer*, 92 Cal. App. 4th at 834.

24  However, "[a]n upward adjustment of the lodestar is appropriate only in extraordinary cases, such

25  as when the attorneys faced exceptional risks of not prevailing or not recovering any fees."

26  *Campbell*, 718 F. Supp. 2d at 1103 (citing *Chalmers*, 796 F.2d at 1212); *Fischer v. SJB-P.D. Inc.*,

27  214 F.3d 1115, 1119 n.4 (9th Cir. 2000); *see also Pennsylvania v. Del. Valley Citizens' Council*

28  *for Clean Air*, 478 U.S. 546, 565 (1986) (noting that a "strong presumption" exists that the

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    lodestar figure represents a "reasonable fee" and therefore it should only be enhanced or reduced

2    in "rare and exceptional cases" (internal quotation marks omitted)).  Notably, the trial court is

3    never *required* to add a fee enhancement to the basic loadstar figure based on any particular factor,

4    but retains discretion to do so in the appropriate case.  *Ketchum*, 24 Cal. 4th at 1138.

5           According to Plaintiff, this is the sort of "rare and exceptional" case warranting a fee

6    enhancement under California law.  *See Fischer*, 214 F.3d at 1119 n.4.  In particular, Plaintiff

7    contends that applying a multiplier of 2.0 to the lodestar amount is appropriate given (1) the

8    contingent nature of the fee award, (2) the novelty and difficulty of the questions involved, and (3)

9    the results obtained.[4]  (Dkt. No. 26 at 8-13.)  Mr. Cruz contends that this case represented a

10   significant risk for him insofar as his "compensation is wholly dependent upon achieving success

11   for his client" since "his client, by virtue of being a loan borrower in financial distress seeking a

12   loan modification during the economic crisis, would not be able to pay his fees."  (*Id.* at 8-9.)

13   According to Mr. Cruz, adding to the risk involved in this case is that he and his client were up

14   against defendants with far greater resources.  (*Id.* at 9.)  In addition, Plaintiff argues that an

15   enhancement is warranted based on the novelty and difficulty of this litigation's subject matter.

16   (*Id.* at 10.)

17          But California courts have made clear that in assessing a request for a lodestar

18   enhancement, "a court should *not* consider contingent risk or exceptional skill to the extent these

19   factors are already encompassed within the lodestar[,]" for when the hourly fee and number of

20   hours billed already reflect the risk, attorneys' skill, and complexity of the issues, enhancing the

21   lodestar for the same reason "would result in unfair double-counting."  *Rodriguez v. Barrita, Inc.*,

22   No. C 09-04057-RS, — F. Supp. 2d —, 2014 WL 2967925, at *9 (N.D. Cal. July 1, 2014)

23   (internal quotation marks, alterations, and citations omitted); *see also Ketchum*, 24 Cal. 4th at

24

25   _____

26   [4] Plaintiff also contends that an enhancement is appropriate given the extent to which defense
     counsel's conduct made much of the litigation unnecessary.  (Dkt. No. 26 at 13-17.)  The Court
27   declines to entertain this argument given that the attorneys' fee award does not include
     compensation for work done after Plaintiff was given notice of the Notice of Rescission, and
28   Plaintiff's argument as to this factor is solely based on post-rescission litigation.

1138-39 (noting that, for the most part, the relevant legal market already compensates for contingency risk, and the lodestar amount already reflects the quality of representation and difficulty of the legal question).

Each of these factors has already been addressed in the initial lodestar calculartion. Mortgage foreclosure cases, by their very nature, involve representation of plaintiffs who at least appear to have been unable to make monthly loan payments and thus are in no position to pay attorneys' fees.  Contingency arrangements, therefore, are a normal feature of representing plaintiffs in such cases.  Presumably, therefore, the contingent nature of these cases is priced into determining the prevailing market rates for such attorneys.  Thus, the lodestar has already addressed the contingent nature of the fee award.  Notably, the lodestar also accounts for the contingent nature of the risk by, among other things, awarding fees based on the prevailing market rate, which is double the rate that Mr. Cruz billed; thus, the lodestar already makes up for the delay in payment caused by Mr. Cruz advancing fees and costs for his client.  *See Ketchum*, 24 Cal. 4th at 1132 ("The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services."); *see, e.g.*, *Rodriguez*, 2014 WL 2967925, at *9.  The same is true of the novelty and complexity of the action:  these are reflected in the significant number of hours that counsel billed in a relatively short period of time.  Thus, although Mr. Cruz undertook a risk in litigating this case involving claims for relief under a recently enacted statute and achieved the result his client sought, the lodestar already reflects these considerations, so no multiplier is appropriate.

### d.    Fee Motion

Finally, Plaintiff seeks an additional $5,720.00 in fees for her attorney's time spent on this motion.  (Dkt. No. 26 at 5; Dkt. No. 27 ¶ 22.)  "In this Circuit, plaintiffs may recover attorneys' fees for time reasonably expended on a motion for attorneys' fees and costs." *Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *12 (N.D. Cal. Aug. 30, 2012) (citation omitted).  On this fee motion, Cruz seeks to bill 28.6 hours of work, representing 11.8 hours of legal research, and 16.8 hours of drafting motions and declarations.  (Dkt. No. 27 ¶ 22.) Considering that this fee request involves novel questions of law, this amount of time seems

United States District Court
Northern District of California

1    reasonable.  However, for the reasons described above in Section B.2.b.iv, *supra*, the Court

2    reduces the number of hours to 28.3.[5]

3              e.      Total Attorneys' Fees

4              In sum, the Court concludes that the lodestar calculation in this case is a total of 127.4

5    hours of work billed at a rate of $400 per hour for a total of $50,960.00.

6              d.      Reasonableness of Costs

7              As mentioned above, the HBOR allows a prevailing plaintiff to recover "reasonable

8    attorney[s'] fees and costs[.]"  Cal. Civ. Code § 2924.12(i).  Plaintiff seeks a total of $2,007.07 in

9    costs as reflected in Plaintiff's counsel's well-documented billing statements.  (*See* Dkt. No. 26 at

10   5 & Ex. A.)  For the reasons explained above, the Court will only award costs of this litigation up

11   until the point that Plaintiff had notice that Green Tree had filed a Notice of Rescission, thereby

12   mooting this action.  Of the total fees sought, $1,739.17 represent fees that fall into this category,

13   that is, fees incurred prior to Plaintiff's receipt of notice that Green Tree had recorded the Notice

14   of Rescission.  (Dkt. No. 27 ¶ 24.)  It appears to the Court that this total amount reflects the sum of

15   *twice* the filing fee for Superior Court ($435.00) and fees for service of documents on Defendants

16   ($820.30) (Dkt. No. 29 at 3-4).  These types of costs are reasonable.  Less the double-billed filing

17   fee, the total costs for the allowable period are $1,255.30.  Plaintiff's counsel's cost account is

18   reasonable and well-documented, and as such the Court will award costs in that amount.[6]

19   **C.    Request for an Order Awarding Interim Fees**

20             Finally, Plaintiff seeks an order for interim fees—that is, an order requiring Green Tree to

21   pay the award of attorneys' fees and costs in full immediately instead of waiting until entry of

22   judgment.  (Dkt. No. 26 at 17-19.)  From Plaintiff's perspective, an interim order is necessary

23   because Green Tree "does not intend to pay any judgment issued by this court awarding plaintiff's

24   fees and costs because it does not want [Plaintiff] to use the funds to redeem and keep her

25

26   ───────────────
     [5] Calculated as the total amount of hours on the fee motion (28.6) less ten percent.

27   [6] As described above in Section B.2.b.iii, *supra*, the Court declines to offset the total costs amount

28   by reducing costs associated with work related to BANA and Fannie Mae because the claims
     against all Defendants are related.

United States District Court
Northern District of California

property."  (Dkt. No. 40 ¶ 4.)

Interim, or interlocutory, fees are the exception rather than the rule; normally, a party must wait until judgment is entered to collect its fees.  *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1085 (9th Cir. 2003).  An award of interim fees may be appropriate where a plaintiff has won preliminary injunctive relief after extensive litigation, and counsel had been advancing the plaintiff's fees and costs and seeks to obtain the fees before proceeding through litigation on the merits, which presented the possibility of an even greater expenditure of the attorneys' time and effort.  *See Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805, 830 (2001).  Such is simply not the case here, where no further litigation looms; to the contrary, the action will be dismissed upon resolution of the instant motion.  Plaintiff will have a judgment in her favor on the fees and costs and will have available to her the mechanisms to enforce said judgment under Federal Rule of Civil Procedure 69(a)(1).

Moreover, even if such an interim award were appropriate on policy grounds, under California law "the propriety of [an] interim award of attorney fees depends on whether it [is] specifically provided for by statute."  *Bell*, 87 Cal. App. 4th at 930 (internal quotation marks omitted).  The cases that Plaintiff cites in support of interim fee awards involve claims under federal civil rights statutes or other federal law, not under state laws.  *See id.* at 832 (citations omitted).  To the extent that California courts have awarded interim fees, they have done so only with respect to awards under Section 1021.5.  *See id.* (collecting cases).  "Apart from the sphere of private attorney general actions under Code of Civil Procedure 1021.5, the award of interim attorney fees in California remains a wholly untested and novel concept that is ordinarily barred by explicit statutory language."  *Id.* (citations omitted).  Absent the legislature's expressed intent to allow parties to recover attorneys' fees and costs prior to final judgment, California courts have declined to find that other state statutes authorize awards of interim fees, even where the statute is meant to protect individual plaintiffs.  *See id.* (declining to read Labor Code section 1194, which provides a cause of action for employees receiving less than minimum wage to recover the unpaid balance of the full amount of minimum wage, as authorizing interim fees).  So it is here.  The HBOR does not specifically provide for interim fees, and the Court will not read into the statute

what the state legislature has declined to adopt. Accordingly, Plaintiff is not entitled to an order awarding interim fees in this matter.

### CONCLUSION

For the reasons stated above, the Court awards Plaintiff reasonable attorneys' fees and costs in the amount of $52,215.30. This amount consists of $50,960.00, in attorneys' fees and $1,255.30 in costs. The Court declines to enter an interim order requiring Green Tree to pay the fee amount by date certain. As the Court previously ruled, this matter is dismissed in its entirety as moot, and judgment will be entered in Plaintiff's favor requiring Green Tree to pay attorneys' fees and costs.

**IT IS SO ORDERED**.

Dated: February 13, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

24